IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| THE NORTH RIVER INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO.   4:19-cv-185-MHC |
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; THE CONTINENTAL INSURANCE COMPANY; and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff The North River Insurance Company ("North River") shows this Honorable Court the following:

### *PARTIES*

1.    North River is a New Jersey corporation with its principal place of business in New Jersey.

2.    Defendant Nationwide Agribusiness Insurance Company ("Nationwide") is an Iowa corporation with its principal place of business in Iowa.

3.   Defendant Continental Casualty Company ("Continental Casualty") is an Illinois corporation with its principal place of business in Illinois.

4.   Defendant The Continental Insurance Company ("Continental Insurance") is a Pennsylvania corporation with its principal place of business in Pennsylvania.

5.   Defendant Travelers Property Casualty Company of America ("Travelers") is a Connecticut corporation with its principal place of business in Connecticut.

## *JURISDICTION AND VENUE*

6.   Nationwide is subject to personal jurisdiction and venue in this Court.

7.   Continental Casualty is subject to personal jurisdiction and venue in this Court.

8.   Continental Insurance is subject to personal jurisdiction and venue in this Court.

9.   Travelers is subject to personal jurisdiction and venue in this Court.

10.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11.   Plaintiff is a citizen of a different state than all Defendants.

12.   The amount in controversy, exclusive of interest and costs, exceeds $75,000.

13.   Venue is proper in the Northern District of Georgia, Rome Division, as activity upon which the insurance claims against the parties were based occurred in this division.

## BACKGROUND FACTS

14.   Grain Craft, Inc. ("Grain Craft"), produced flour which was sold to third parties and was later determined to be contaminated with peanut allergen.

15.   The contaminated flour was sold to multiple customers, including (but not limited to) Chick-fil-A, CSM Bakery, Frito-Lay, Hostess, Lance & Jennings, Kellogg, Mars, Safeway, and 7-Eleven.

16.   Grain Craft discontinued shipments of the contaminated flour as of May 1, 2016, and conducted a voluntary recall of the flour, which was milled from March 14, 2016, to April 30, 2016.

17.   Customers submitted claims to Grain Craft and its insurers North River, Travelers, Nationwide, and Continental.

18.   Some of the claims were for flour that caused millions of dollars in property damage prior to April 1, 2016, and some were for flour that caused millions of dollars in property damage on or after April 1, 2016.

## 2015 NATIONWIDE PRIMARY POLICY

19.   Nationwide issued a Commercial General Liability Coverage policy ("2015

Nationwide Primary Policy"), with Policy Number CPP855007A and an Effective Date of April 1, 2015, to Southeastern Mills, Inc., as the first Named Insured.

20.   The 2015 Nationwide Primary Policy has an April 1, 2015, to April 1, 2016 policy period.

21.   The 2015 Nationwide Primary Policy has a $1,000,000 per occurrence limit of liability and a $2,000,000 general aggregate limit.

22.   Grain Craft sought coverage under the 2015 Nationwide Primary Policy.

23.   Grain Craft is a Named Insured under the 2015 Nationwide Primary Policy.

24.   The 2015 Nationwide Primary Policy includes the following provisions:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

   . . .

   b.  This insurance applies to "bodily injury" and "property damage" only if:

      (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

25.     The 2015 Nationwide Primary Policy includes the following definitions:

> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> …
>
> **17.** "Property damage" means:
>
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

26.     The 2015 Nationwide Primary Policy provides primary coverage for the claims against Grain Craft for the property damage caused by the contaminated flour which occurred prior to April 1, 2016.

27.     Nationwide received and paid claims against Grain Craft under the 2015 Nationwide Primary Policy for property damage caused by the contaminated flour.

28.   A part of the amount paid by Nationwide under the 2015 Nationwide Primary Policy was for property damage that (a) occurred after the April 1, 2015, to April 1, 2016 policy period, and (b) was covered by and should have been paid by Nationwide under the 2016 Nationwide Primary Policy (discussed below), resulting in more available coverage under the 2015 Nationwide Primary Coverage for the claims against Grain Craft.

### *2016 NATIONWIDE PRIMARY POLICY*

29.   Nationwide issued a Commercial General Liability Coverage policy ("2016 Nationwide Primary Policy"), with Policy Number CPP855007A and an Effective Date of April 1, 2016, to Southeastern Mills as the Named Insured.

30.   The 2016 Nationwide Primary Policy period is from April 1, 2016, to November 1, 2016.

31.   The 2016 Nationwide Primary Policy has a $1,000,000 per occurrence limit of liability and a $2,000,000 general aggregate limit.

32.   North River is a Named Insured under the 2016 Nationwide Primary Policy.

33.   The 2016 Nationwide Primary Policy includes provisions identical or similar to the provisions in the 2015 Nationwide Primary Policy that are set forth in paragraphs 27 and 28, above.

34. The 2016 Nationwide Primary Policy provides primary coverage for the claims against Grain Craft for the property damage caused by the contaminated flour which occurred from April 1, 2016, to November 1, 2016.

35. A portion of the claims paid by the parties was for property damage that occurred during the April 1, 2016, to November 1, 2016 policy period of the 2016 Nationwide Primary Policy, which should have been paid by Nationwide under that policy.

### *2015 NATIONWIDE UMBRELLA POLICY*

36. Nationwide issued a Commercial Liability Umbrella policy ("2015 Nationwide Umbrella Policy"), with Policy Number CU 855007A and an Effective Date of April 1, 2015, to Southeastern Mills as the Named Insured.

37. The 2015 Nationwide Umbrella Policy period is from April 1, 2015, to April 1, 2016.

38. The 2015 Nationwide Umbrella Policy has a $10,000,000 per occurrence limit of liability and a $10,000,000 general aggregate limit.

39. North River is a Named Insured under the 2015 Nationwide Umbrella Policy.

40. The 2015 Nationwide Umbrella Policy includes the following provisions:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.

   . . .

   c. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph **1.a.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

41.     The 2015 Nationwide Umbrella Policy includes the following definitions:

   13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   …

18. "Property damage" means:

   a. Physical injury to tangible property, in-
   cluding all resulting loss of use of that
   property. All such loss of use shall be
   deemed to occur at the time of the physical
   injury that caused it; or

   b. Loss of use of tangible property that is not
   physically injured. All such loss of use shall
   be deemed to occur at the time of the
   "occurrence" that caused it.

. . .

19. "Retained limit" means the available limits of
"underlying insurance" scheduled in the Dec-
larations or the "self-insured retention",
whichever applies.

20. "Self-insured retention" means the dollar
amount listed in the Declarations that will be
paid by the insured before this insurance be-
comes applicable only with respect to "occur-
rences" or offenses not covered by the
"underlying insurance". The "self-insured reten-
tion" does not apply to "occurrences" or
offenses which would have been covered by
"underlying insurance" but for the exhaustion
of applicable limits.

. . .

23. "Ultimate net loss" means the total sum, after
reduction for recoveries or salvages collectible,
that the insured becomes legally obligated to
pay as damages by reason of settlement or
judgments or any arbitration or other alternate
dispute method entered into with our consent
or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of
insurance listed in the Declarations under the
Schedule of "underlying insurance".

42.    The 2015 Nationwide Umbrella Policy's Declarations include a Schedule of

Underlying Insurance, listing Nationwide Policy CPP855007A with the

policy period of "04/01/14 to 04/01/15" as the only underlying insurance with

"Commercial General Liability" coverage.

43.   Nationwide received and paid claims under the 2015 Nationwide Umbrella Policy for property damage caused by the contaminated flour.

44.   A part of the amount paid by Nationwide under the 2015 Nationwide Umbrella Policy was for property damage (a) occurred after the April 1, 2015, to April 1, 2016 policy period, and (b) was covered by and should have been paid by Nationwide under the 2016 Nationwide Umbrella Policy (discussed below), resulting in more available coverage under the 2015 Nationwide Umbrella Coverage.

### *2016 NATIONWIDE UMBRELLA POLICY*

45.   Nationwide issued a Commercial Liability Umbrella policy ("2015 Nationwide Umbrella Policy"), with Policy Number CU 855007A and an Effective Date of April 1, 2016, to Southeastern Mills as the Named Insured.

46.   The 2016 Nationwide Umbrella Policy period is from April 1, 2016, to November 1, 2016.

47.   The 2016 Nationwide Umbrella Policy has a $10,000,000 per occurrence limit of liability and a $10,000,000 general aggregate limit.

48.   Grain Craft is a Named Insured under the 2016 Nationwide Umbrella Policy.

49.   The 2016 Nationwide Umbrella Policy includes provisions identical or similar to the provisions in the 2015 Nationwide Umbrella Policy that are set forth in

paragraphs 44 and 45, above.

50.   The 2016 Nationwide Umbrella Policy's Declarations include a Schedule of Underlying Insurance, listing Nationwide Policy CPP855007A as the only underlying insurance with "Commercial General Liability" coverage.

51.   Grain Craft received claims against it for property damage caused by the contaminated flour occurring within the 2016 Nationwide Umbrella Policy's policy period.

52.   A portion of the claims paid by the parties was for property damage that occurred during the April 1, 2016, to November 1, 2016 policy period of the 2016 Nationwide Umbrella Policy, which should have been paid by Nationwide under that policy.

## *2015 CNA EXCESS POLICY*

53.   Continental Casualty Company issued an Excess Third Party Liability Policy ("2015 CNA Excess Policy"), with Policy Number L 4030564065 and an April 1, 2015 Effective Date, to Southeastern Mills as the Named Insured.

54.   A true and accurate copy of the 2015 CNA Excess Policy is attached to this complaint as Exhibit A.

55.   The 2015 CNA Excess Policy period is from April 1, 2015, to April 1, 2016.

56.   The 2015 CNA Excess Policy has a $10,000,000 per occurrence limit of

liability and a $10,000,000 general aggregate limit.

57.   Grain Craft qualifies as an insured under the 2015 CNA Excess Policy.

58.   The 2015 CNA Excess Policy includes the following provisions:

**SECTION I – COVERAGE**

**1.  Insuring Agreement**

We will pay on behalf of the insured "ultimate net loss" to which this insurance applies in excess of the limits of insurance provided by the "underlying insurance" but only up to the limits of insurance for this policy shown in the Limit of Insurance Schedule in the Declarations. This insurance:

**a.**  Incorporates all of the agreements, limitations and conditions of the "underlying insurance" except:

**(1)**  Any obligations to investigate, defend or pay for such costs and expenses of the insured's defense; and

**(2)**  Any provision in the "underlying insurance" which is inconsistent with any provision in this policy. In the event of any inconsistent provisions in the "underlying insurance" and this policy, the provisions of this policy control.

**b. (1)**  Applies to "ultimate net loss" because of injury or damage which takes place during the policy period, except when **b.(2)** below applies;

**(2)**  Applies to "ultimate net loss" because of an "incident" that takes place during the policy period rather than injury or damage that takes place during the policy period when the "underlying insurance" applies to an "incident" rather than injury or damage that takes place during the policy period.

. . .

**SECTION IV – LIMITS OF INSURANCE**

1. The limits of insurance shown in the Limit of Insurance Schedule in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or suits brought;

   c. Persons or organizations making claims or bringing suits.

2. The limits of insurance shown in the Limit of Insurance Schedule in the Declarations apply only in excess of the limits of insurance provided by the "underlying insurance."

3. The Aggregate Limit shown in the Limit of Insurance Schedule in the Declarations is the most we will pay for the sum of all "ultimate net loss" to which this insurance applies. The Aggregate Limit of this insurance applies in the same manner, if at all, as the aggregate limit of the "underlying insurance."

4. Subject to paragraph **3.** above, the Each Incident Limit shown in the Limit of Insurance Schedule in the Declarations is the most we will pay for the sum of all "ultimate net loss" to which this insurance applies arising out of any one "incident" or all injury, or damage arising out of any one occurrence.

59.    The 2015 CNA Excess Policy includes the following definitions:

2. **"Underlying insurance"** means the insurance policies and their renewals or replacements listed in the Schedule of Underlying Insurance in the Declarations, which provide the layer of coverage immediately preceded by this policy. "Underlying insurance" is coverage of the type and at the limits of insurance shown in the Schedule of Underlying Insurance in the Declarations.

. . .

7. **"Ultimate Net Loss"** means the actual damages, less any recoveries or salvage, that the insured is legally obligated to pay, either through final judgment or settlement of claims or suits.

60.   The 2015 CNA Excess Policy's Declarations include a Schedule of Underlying Insurance identifying the 2015 Nationwide Umbrella Policy.

61.   Continental Casualty received and paid claims under the 2015 CNA Excess Policy for property damage caused by the contaminated flour.

62.   At least a part of the amount paid by Continental Casualty under the 2015 CNA Excess Policy was for property damage that (a) occurred after the April 1, 2015, to April 1, 2016 policy period, and (b) was covered by and should have been paid by Nationwide under the 2015 Nationwide Primary Policy, the 2015 Nationwide Umbrella Policy, the 2016 Nationwide Primary Policy, and the 2016 Nationwide Umbrella Policy, and the 2016 CNA Excess Policy (discussed below).

## *2016 CNA EXCESS POLICY*

63.   The Continental Insurance Company issued a CNA Paramount Excess Policy ("2016 CNA Excess Policy"), with Policy Number FFX 4030564065 and an April 1, 2016 Effective Date, to Southeastern Mills as the Named Insured.

64.   A true and accurate copy of the 2016 CNA Excess Policy is attached to this complaint as Exhibit B.

65.   The 2016 CNA Excess Policy period is from April 1, 2016, to November 1, 2016.

66.   The 2016 CNA Excess Policy has a $10,000,000 "Each Incident Limit" and a

$10,000,000 "Aggregate Limit."

67.   Grain Craft qualifies as an insured under the 2016 CNA Excess Policy.

68.   The 2016 CNA Excess Policy includes the following provisions:

**I.   COVERAGE**

The Insurer will pay on behalf of the insured those **damages** in excess of the **underlying limits**. Coverage under this Policy shall attach only after the full amount of the **underlying limits** have been exhausted through payment in legal currency of covered loss under all **underlying insurance** by the **underlying insurer** or the **Named Insured**.

. . .

**III.   LIMIT OF INSURANCE**

**A.   Multiple insureds, claims, claimants**

The limits of insurance shown in the Declarations of this Policy and the rules below fix the most the Insurer will pay regardless of the number of:

1.   insureds;
2.   claims made or suits brought against the insured; or
3.   persons or organizations making claims or bringing suits.

**B.   Aggregate Limit**

Subject to the Each **Incident** limit, the limit of insurance shown in the Declarations of this Policy as the Aggregate limit is the most that the Insurer will pay as **damages** under this Policy, regardless of the length of the policy period. However, the Aggregate limit of insurance:

1.   will not apply to **damages** covered by the **controlling underlying policy** to which an aggregate limit does not apply, provided that all other **underlying insurance** also does not apply an aggregate limit; and
2.   will apply in the same manner as the aggregate limit of the **controlling underlying policy** applies, provided that all other **underlying insurance** also applies the aggregate limit in the same manner.

**C.   Policy Aggregate Limit**

This provision **C.** only applies if an amount is shown in the Declarations as the Policy Aggregate limit.

Subject to the Each **Incident** limit and Aggregate limit, the Policy Aggregate limit is most the Insurer will pay as **damages** under this Policy, except for **damages** because of auto liability covered by all applicable policies listed in the Schedule of **Underlying Insurance** under which the limits of insurance of all such policies are not aggregated.

**D.   Each Incident Limit**

Subject to the Aggregate limit and Policy Aggregate limit, the limit of insurance shown in the Declarations of this Policy as the Each **Incident** limit is the most the Insurer will pay as **damages** arising out of any one **incident** under this Policy.

If the limits of insurance under this Policy are exhausted by payment of **damages**, the Insurer's obligations shall be deemed completely fulfilled and extinguished.

69.    The 2016 CNA Excess Policy includes the following definitions:

**Incident** has the same definition as that term or the equivalent term in the **controlling underlying policy**. If not so defined, **incident** means an accident, event, occurrence, offense, wrongful act or other similar trigger of coverage as defined in the **controlling underlying policy**.

. . .

**Other insurance** means any:

   A.   valid and collectible policy of insurance;

   B.   self insurance; or

   C.   indemnity agreement by which an insured arranges for funding or transferring its liabilities

that provides coverage that this Policy also provides. **Other insurance** does not include **underlying insurance** or any policy that was bought specifically to apply in excess of the limits of insurance shown in the Declarations of this Policy.

. . .

**Underlying insurance** means policies of insurance listed in the Schedule of **Underlying Insurance** including renewal or replacement of such insurance which is neither more restrictive nor more broad than that listed in the Schedule of **Underlying Insurance**.

**Underlying insurer** means any insurer providing the **underlying insurance**. It does not include any insurer whose policies were purchased specifically to be in excess of this policy.

**Underlying limits** means the limits designated as such in the Schedule of **Underlying Insurance**.

70.    The 2016 CNA Excess Policy's Declarations include a Schedule of Underlying Insurance identifying the 2016 Nationwide Excess Policy.

71.    Grain Craft received claims against it for property damage caused by the contaminated flour occurring within the 2016 CNA Excess Policy's policy period.

72.    A portion of the claims paid by the parties was for property damage that occurred during the April 1, 2016, to November 1, 2016 policy period of the 2016 CNA Excess Policy, which should have been paid by Continental Insurance under that policy.

## *2015 TRAVELERS EXCESS POLICY*

73.   Travelers issued an Excess Liability Policy ("2015 Travelers Excess Policy"), with Policy Number ZUP-14P92360-15-NF and an April 1, 2015 Effective Date, to Southeastern Mills as the Named Insured.

74.   A true and accurate copy of the 2015 Travelers Excess Policy is attached to this complaint as Exhibit C.

75.   The 2015 Travelers Excess Policy period is from April 1, 2015, to April 1, 2016.

76.   The 2015 Travelers Excess Policy has a $15,000,000 per occurrence limit of liability and a $15,000,000 aggregate limit.

77.   Grain Craft qualifies as an insured under the 2015 Travelers Excess Policy.

78.   The 2015 Travelers Excess Policy includes the following provisions:

## SECTION I – EXCESS (FOLLOWING FORM) LIABILITY COVERAGE

### 1. INSURING AGREEMENT

    **a.** We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which this insurance applies, provided that the "controlling underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. If a sublimit is specified in any "underlying insurance", this insurance does not apply to damages that are in excess of that sublimit unless such sublimit is shown for that "underlying insurance" in the Schedule Of Underlying Insurance or the Schedule Of Controlling Underlying Insurance in the Declarations.

    **b.** This insurance is subject to:

        **(1)** The same terms, conditions, agreements, exclusions and definitions as the "controlling underlying insurance", except with respect to any provisions to the contrary contained in this insurance; and

        **(2)** Any additional exclusions not contained in the "controlling underlying insurance" that are contained in any other "underlying insurance".

. . .

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all damages covered under this policy, except:

   a. Damages because of injury or damage included in the "auto hazard"; or

   b. Damages because of injury or damage for which insurance is provided under any Aircraft Liability coverage included as "controlling underlying insurance" to which no aggregate limit applies.

   If a policy of "underlying insurance" that is immediately underlying this policy applies a separate products-completed operations aggregate limit in that same policy, a separate Aggregate Limit will apply to all damages covered under this policy that would have been subject to such products-completed operations aggregate limit in that policy of "underlying insurance".

3. Subject to Paragraph 2. above, the Occurrence Limit is the most we will pay for all damages covered under this policy arising out of any one "event" to which the applicable "controlling underlying insurance" applies a limit of insurance that is separate from the aggregate limit of insurance under that insurance.

4. The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months.    The policy period begins with the effective date shown in the Declarations.    If the policy period is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period.

79.    The 2015 Travelers Excess Policy includes the following definitions:

2. "Applicable underlying limit" means the sum of:

   a. The applicable limit of insurance stated for the policies of "underlying insurance" in the Schedule Of Underlying Insurance or the Schedule Of Controlling Underlying Insurance in the Declarations less the amount by

which that limit has been reduced solely by payments as permitted in paragraph **1.c.** of Section **1** – Excess Liability Coverage; and

**b.** The applicable limit of insurance of any other insurance that applies.

. . .

**4.** "Controlling underlying insurance":

a.Means the policy or policies of insurance listed in the Schedule Of Controlling Underlying Insurance in the Declarations.

**b.** Includes any renewal or replacement of such policies if such renewal or replacement is during the policy period of this Excess (Following Form) Liability Insurance Policy.

**c.** Does not include any part of the policy period of any of the policies described in Paragraphs **a.** or **b.** above that began before, or that continues after, the policy period of this Excess (Following Form) Liability Insurance Policy.

**5.** "Event" means an occurrence, offense, accident, act, error or omission or other unit.

. . .

**8.** "Underlying insurance":

**a.** Means the policy or policies of insurance listed in the Schedule Of Underlying Insurance or the Schedule Of Controlling Underlying Insurance in the Declarations.

**b.** Includes any renewal or replacement of such policies if such renewal or replacement is during the policy period of this Excess (Following Form) Liability Insurance Policy.

**c.** Does not include any part of the policy period of any of the policies described in Paragraphs **a.** or **b.** above that began before, or that continues after, the policy period of this Excess (Following Form) Liability Insurance Policy.

80.   The 2015 Travelers Excess Policy's Schedule of Underlying Insurance identifies the 2015 Nationwide Umbrella Policy and the 2015 CNA Excess Policy.

81.   The 2015 Travelers Excess Policy's Schedule of Controlling Underlying Insurance identifies the 2015 Nationwide Umbrella Policy.

82.   Travelers received and paid claims for property damage caused by the contaminated flour.

83.   At least a part of the amount paid by Travelers for those claims was for property damage that (a) occurred after the April 1, 2015, to April 1, 2016 policy period, and (b) was covered by and should have been paid by Nationwide, Continental Casualty, and/or Continental Insurance under their policies.

### *2016 TRAVELERS EXCESS POLICY*

84.   Travelers issued an Excess Liability Policy ("2016 Travelers Excess Policy"), with Policy Number ZUP-14P92360-16-NF and an April 1, 2016 Effective Date, to Southeastern Mills as the Named Insured.

85.   A true and accurate copy of the 2016 Travelers Excess Policy is attached to this complaint as Exhibit D.

86. The 2016 Travelers Excess Policy period is from April 1, 2016, to November 1, 2016.

87. The 2016 Travelers Excess Policy has a $15,000,000 per occurrence limit of liability and a $15,000,000 aggregate limit.

88. Grain Craft qualifies as an insured under the 2015 Travelers Excess Policy.

89. The 2016 Travelers Excess Policy includes the same provisions and definitions from the 2015 Travelers Excess Policy that are quoted in paragraphs 82 and 83, above.

90. The 2016 Travelers Excess Policy's Schedule of Underlying Insurance identifies the 2016 Nationwide Umbrella Policy and the 2016 CNA Excess Policy.

91. The 2016 Travelers Excess Policy's Schedule of Controlling Underlying Insurance identifies the 2016 Nationwide Umbrella Policy.

92. Grain Craft received claims against it for property damage caused by the contaminated flour occurring within the 2016 Travelers Excess Policy's policy period.

93. A portion of the claims paid by the parties was for property damage that occurred during the April 1, 2016, to November 1, 2016 policy period of the

2016 Travelers Excess Policy, which should have been paid by Travelers under that policy.

*2015 NORTH RIVER EXCESS POLICY*

94. In 2015, North River issued an Excess Liability Policy ("2015 North River Excess Policy"), with Policy Number 5227963452, to Southeastern Mills as the Named Insured.

95. A true and accurate copy of the 2015 North River Excess Policy is attached to this complaint as Exhibit E.

96. The 2015 North River Excess Policy period is from April 1, 2015, to April 1, 2016.

97. The 2015 North River Excess Policy has a $15,000,000 each occurrence limit of liability and a $15,000,000 aggregate limit.

98. Grain Craft qualifies as an insured under the 2015 North River Excess Policy.

99. The 2015 North River Excess Policy includes the following provisions:

I.   **COVERAGE**

WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE, and (2) only after all UNDERLYING INSURANCE has been exhausted by the payments of the limits of such insurance for losses arising out of occurrences insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

. . .

IV.   **LIMIT OF LIABILITY**

The Limit of Liability stated in the Declarations as applicable to "each occurrence" shall be the total limit of OUR liability for all loss sustained as the result of any one occurrence.

The Limit of Liability stated in the Declarations as "aggregate" shall be the total limit of OUR liability for all losses sustained during each annual period of this policy; and for which any UNDERLYING INSURANCE provides coverage that is subject to an aggregate limit.

This policy shall apply in excess of the UNDERLYING INSURANCE limits shown in the Declarations. However, if the UNDERLYING INSURANCE limit has been reduced or exhausted solely by reason of losses paid thereunder arising out of occurrences which take place during OUR policy period, then this policy shall:

1.  In the event of reduction, pay the excess of the reduced underlying limit;

2.  In the event of exhaustion, continue in force as UNDERLYING INSURANCE.

However, when 1. or 2. above apply, WE will not pay that portion of a loss that is within the underlying limits of insurance which YOU have agreed to fund by self-insurance or means other than insurance.

The aggregate limit in this policy shall apply separately for each coverage in which all underlying policies listed in Item 5 of the Declarations provide an aggregate limit.

The Limit of Liability of this policy shall apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period shown in Item 2 of the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Liability.

100.   The 2015 North River Excess Policy includes the following definitions:

III.   **DEFINITIONS**

A.  CONTROLLING UNDERLYING INSURANCE means the policy or policies of insurance as stated in Item 5 of the Declarations.

B.  POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

C.  ULTIMATE NET LOSS means the amount of the principal sum, award or verdict actually paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable, either by adjudication or compromise with the written consent of US, after making proper deduction for all recoveries and salvages.

Defense expense payments shall be included within the ULTIMATE NET LOSS, provided that such expenses are included within the terms, conditions, and limits of insurance of any UNDERLYING INSURANCE.

D.  UNDERLYING INSURANCE means the policy or policies of insurance as described in Item 5 of the Declarations, including CONTROLLING UNDERLYING INSURANCE.

E. WE, US and OUR refers to the company stated in Item 3 of the Declarations as providing this insurance.

F. YOU and YOUR means a person or organization who qualifies as an insured in all of the underlying policies listed in Item 5 of the Declarations.

101.  The 2015 North River Excess Policy includes the following conditions:

K.  **OTHER INSURANCE**

If other insurance (whether such insurance is stated to be primary, contributing, excess or contingent) collectable or not, is available to YOU covering a loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such other insurance.

. . .

O.  **SUBROGATION**

In the event of any payment under this policy by US, WE shall be subrogated to all of YOUR rights of recovery against any person or organization, and YOU shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  YOU shall do nothing after loss to prejudice such rights.

102.  The 2015 North River Excess Policy's Schedule of Underlying Insurance identifies the 2015 Nationwide Umbrella Policy, the 2015 CNA Excess Policy, and the 2015 Travelers Excess Policy.

103.  North River received and paid claims for property damage caused by the contaminated flour.

104.  At least a part of the amount paid by North River for those claims was for property damage that occurred after the April 1, 2015, to April 1, 2016 policy period.

105.  The amount paid by North River was for claims for property damage covered by the policies issued by Nationwide, Continental Casualty, Continental

Insurance, and/or Travelers, which should have been paid by those Defendants.

<u>*CLAIM FOR REIMBURSEMENT AND CONTRIBUTION*</u>

106. North River is contractually and equitably subrogated to Grain Craft's rights against Nationwide, Continental Insurance, Continental Casualty, and Travelers.

107. North River is entitled to reimbursement, contribution, and/or indemnification from the Defendants for the amounts that it paid for claims covered by their policies.

108. Nationwide has a duty to reimburse North River for the claims paid by North River that were covered by the Nationwide policies.

109. Continental Casualty and Continental Insurance have a duty to reimburse North River for the claims paid by North River that were covered by the CNA policies.

110. Travelers has a duty to reimburse North River for the claims paid by North River that were covered by the Travelers policies.

111. North River is entitled to recover from Nationwide, Continental Insurance, Continental Casualty, and/or Travelers in the amount of the claims it paid for property damage covered by the Defendants' policies.

112. That amount exceeds $11,230,964.06.

113. North River is also entitled to recover its expenses it incurred in defending and settling the claims covered by the Defendants' policies, including forensic accounting fees of $279,622.65.

WHEREFORE, Plaintiff The North River Insurance Company prays:

(a) That each and every Defendant be required to respond to the allegations set forth in this complaint;

(b) That the Court enter a judgment in favor of North River and against the Defendants in the amount of the payments it made for the claims that were covered by the policies of the Defendants and should have been paid by the Defendants, plus the amount of North River's expenses incurred in defending and settling those claims;

(d) For such other relief as this Court deems just and proper.

Respectfully submitted,

**Bovis, Kyle, Burch & Medlin, LLC**

200 Ashford Center North
Suite 500
Atlanta, Georgia  30338-2680
(770) 391-9100
kjackson@boviskyle.com
rbryant@boviskyle.com

/s/ Kim M. Jackson
Ga. State Bar No. 387420

/s/ W. Randal Bryant
Ga. State Bar No. 092039

*Counsel for Plaintiff The North*
*River Insurance Company*